# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# GREEN BAY DIVISION

| | |
|---|---|
| SONIA IVETTE BAUMANN, <br><br> Plaintiff, <br><br> v. <br><br> THE CBE GROUP, INC., <br><br> Defendant. | CIVIL COMPLAINT <br><br> CASE NO. 1:17-cv-00279 <br><br> DEMAND FOR JURY TRIAL |

## COMPLAINT

NOW comes SONIA BAUMANN ("Plaintiff"), by and through her attorneys, Sulaiman Law Group, Ltd. ("Sulaiman"), complaining as to the conduct of THE CBE GROUP, INC. ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Fair Debt Collection Practices Act ("FDCPA") under 15 U.S.C. §1692 *et seq.*, the Telephone Consumer Protection Act ("TCPA") under 47 U.S.C. §227 *et seq.*, the Wisconsin Consumer Act ("WCA") under Wis. Stat. §427 *et seq.*, and Intentional Infliction of Emotional Distress for Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the FDCPA and TCPA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C. §1692, 47 U.S.C §227, 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business in the Eastern District of Wisconsin and a substantial portion of the events or omissions giving rise to the claims occurred within the Eastern District of Wisconsin.

**PARTIES**

4. Plaintiff is a 63 year-old natural person residing at N3993 Price Polar Road, Bryant, Wisconsin, which lies within the Eastern District of Wisconsin.

5. Plaintiff is a "person" as defined by 47 U.S.C. §153(39).

6. Plaintiff is a "consumer" as defined by §1692a(3) of the FDCPA.

7. Plaintiff is a "customer" as defined by §421.301(17) of the WCA.

8. Defendant is a third-party debt collection agency with its headquarters located at 1309 Technology Parkway, Cedar Falls, Iowa. Defendant regularly collects upon consumers located in Wisconsin.

9. Defendant is a "debt collector" and "creditor" as defined by §427.103(3) and §421.301(16) of the WCA, respectively, because it regularly engages in consumer credit transactions uses the mail and/or the telephone to collect, or attempt to collect, delinquent consumer accounts.

10. Defendant is a "debt collector" as defined by §1692a(6) of the FDCPA , because it regularly use the mail and/or the telephone to collect, or attempt to collect, delinquent consumer accounts. Defendant has been a member of ACA International, an association of credit and collection professionals, since 1950.[1]

11. Defendant is a "person" as defined by 47 U.S.C. §153(39).

---

[1] http://www.acainternational.org/search#memberdirectory

12. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

### FACTS SUPPORTING CAUSES OF ACTION

13. In the summer of 2015, Plaintiff began receiving calls from Defendant to her cellular phone, (715) XXX-5224.

14. At all times relevant to the instant action, Plaintiff was the sole subscriber, owner, and operator of the cellular phone ending in 5224. Plaintiff is and always has been financially responsible for the cellular phone and its services.

15. Defendant has used a variety of phone numbers when calling Plaintiff's cellular phone, including but not limited to: (800) 910-5399, (800) 870-6176, (888) 742-4129, and (888) 822-5894.

16. Upon information and belief, the aforementioned phone numbers are all utilized by Defendant during its debt collection activity.

17. Upon answering calls from Defendant, Plaintiff experiences a noticeable pause, lasting approximately three to four seconds in length, before a live person begins to speak.

18. Upon speaking with Defendant, Plaintiff was informed that it was seeking to collect upon outstanding consumer debt.

19. Plaintiff notified Defendant's representative that she is not in a position to pay this debt and demanded that it stop calling her.

20. Plaintiff has told Defendant to stop calling her on multiple occasions.

21. Defendant has called Plaintiff's cellular phone multiple times during the same day, even after being told that she does not wish to be contacted.

22. For example, Defendant called Plaintiff's cellular phone at least four times in the same day on each of the following dates:

- November 18, 2015
- November 23, 2015
- November 25, 2015
- December 7, 2015
- December 9, 2015
- December 10, 2015
- December 16, 2015

23. Despite her multiple demands to cease calling, Defendant continued to regularly call Plaintiff's cellular phone up until the end of 2016.

24. During one conversation with Defendant, one of its representatives threatened Plaintiff, telling her that if she did not make a payment, a warrant would be issued for her arrest and a sheriff would come to her home.

25. Defendant has called Plaintiff's cellular phone not less than 95 times since she asked it to stop calling.

26. Defendant's phone calls have caused Plaintiff a great deal of stress in her life, as she is disabled and suffered a serious fall due to the added stress imposed by Defendant's conduct.

27. Defendant has even called Plaintiff's husband and sister-in-law regarding this same debt, adding further stress to her life.

28. Frustrated over Defendant's conduct, Plaintiff spoke with Sulaiman regarding her rights, resulting in expenses.

29. With the goal of specifically addressing Defendant's conduct, Plaintiff has expended approximately $72.00 to purchase and maintain an application subscription on her cellular phone to block the calls, resulting in pecuniary loss.

30. Plaintiff has been unfairly and unnecessarily harassed by Defendant's actions.

31. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, invasion of privacy, aggravation that accompanies collection telephone calls, emotional distress, increased risk of personal injury resulting from the distraction caused by the never-ending calls, increased usage of her telephone services, loss of cellular phone capacity, diminished cellular phone functionality, decreased battery life on her cellular phone, and diminished space for data storage on her cellular phone.

## COUNT I – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

32. Plaintiff repeats and realleges paragraphs 1 through 31 as though fully set forth herein.

### a. Violations of the FDCPA §§1692b(2)-(3) and §1692c(b)

33. The FDCPA, pursuant to §1692b(2), states that any debt collector "communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall not state that such consumer owes any debt." §1692b(3) further prohibits communicating "with such person more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information." Also, pursuant to §1692c(b), "a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector."

34. Defendant violated §1692b(2), b(3), and c(b) when it repeatedly contacted Plaintiff's husband and sister-in-law to inquire about the alleged debt. Plaintiff demanded that Defendant stop contacting her, but despite her multiple pleas, Defendant not only continued its harassing

conduct towards Plaintiff, but also contacted her family members in an attempt to collect upon the alleged debt.

### b. Violations of FDCPA §1692c(a)(1), §1692d, d(1)-(2), (5)

35. The FDCPA, pursuant to 15 U.S.C. §1692c(a)(1), "if a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except to advise the consumer that the debt collector's further efforts are being terminated."

36. The FDCPA, pursuant to 15 U.S.C. §1692d, prohibits a debt collector from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

37. Defendant violated §1692c(a)(1) and d when it continuously called Plaintiff after being notified to stop. Defendant called Plaintiff at least four times in one day on seven different days, using various phone numbers, and called her over 95 times in total. This repeated behavior of systematically calling Plaintiff's phone over and over after she demanded that it cease contacting her was harassing and abusive. Defendant continued its onslaught of phone calls with the specific goal of oppressing and abusing Plaintiff.

38. In addition, 15 U.S.C. §1692d prohibits specific behavior, such as:

> "The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person." §1692d(1)

> "The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader." §1692d(2)

> "Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." §1692d(5)

6

39. Defendant violated §1692d(1), d(2), and d(5) when it continuously called Plaintiff after being notified to stop, and threatened her with abusive language and illegal actions. During a phone call with Defendant, one of its representatives told Plaintiff that if she did not make a payment, there would be a warrant issued for her arrest and a sheriff would come to her home. This language is naturally harassing to any person who hears it, as the threat of imprisonment and police officers coming to one's home would cause an individual to feel scared and threatened. Defendant engaged in this behavior in an attempt to compel Plaintiff to make a payment. Threatening a consumer with imprisonment violates the FDCPA, as even if Plaintiff failed to make payment, Defendant would have absolutely no authority or lawful basis to have a warrant issued for her arrest, or to send a sheriff to her home. Nevertheless, Defendant made these statements and continued its harassing conduct, calling Plaintiff over 95 times after being told to stop.

40. Defendant was notified by Plaintiff that its calls were not welcomed. As such, Defendant knew that its conduct was inconvenient and harassing to her.

### c. Violations of the FDCPA § 1692e

41. The FDCPA, pursuant to 15 U.S.C. §1692e, prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

42. In addition, this section enumerates specific violations, such as:

> "The threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. §1692e(5)
>
> "The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer." 15 U.S.C. §1692e(7)
>
> "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. §1692e(10)

7

43. Defendant violated §1692e, e(5), e(7), and e(10) when it used deceptive means to collect and/or attempt to collect the alleged debt. Despite being told to stop calling, Defendant continued to relentlessly contact Plaintiff over 95 times. Instead of ceasing this behavior, Defendant continued to systematically place calls to Plaintiff's cellular phone using a wide-array of phone numbers and area codes, in a deceptive attempt to force her to answer its calls. Defendant called Plaintiff at least four times in one day on seven different days, and even called Plaintiff's husband and sister-in-law in an attempt to collect upon the alleged debt. Defendant also threatened Plaintiff by telling her that if she did not make a payment, a warrant would be issued for her arrest. Defendant could not legally take this action, as Plaintiff could not lawfully be arrested for failing to make a payment towards the alleged debt. Defendant, through its actions, made Plaintiff feel as if she committed a crime, and coupled with the fact that it called her family members about the debt as well, Defendant attempted to disgrace Plaintiff into making a payment. Defendant also misleadingly represented to Plaintiff that it had the legal ability to contact her via an automated system when it no longer had consent to do so.

    **d. Violations of FDCPA § 1692f**

44. The FDCPA, pursuant to 15 U.S.C. §1692f, prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

45. Defendant violated §1692f when it unfairly and unconscionably attempted to collect upon a debt by continuously calling Plaintiff after she notified it to stop contacting her. Defendant also used different phone numbers when it called Plaintiff's cellular phone. Attempting to coerce Plaintiff into payment by placing voluminous phone calls using different numbers after being notified to stop calling is unfair and unconscionable behavior. These means employed by Defendant only served to worry and confuse Plaintiff.

46. As pled in paragraphs 25 through 31, Plaintiff has been harmed and suffered damages as a result of Defendant's illegal actions.

WHEREFORE, Plaintiff, SONIA IVETTE BAUMANN, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff statutory damages of $1,000.00 as provided under 15 U.S.C. §1692k(a)(2)(A);

c. Awarding Plaintiff actual damages, in an amount to be determined at trial, as provided under 15 U.S.C. §1692k(a)(1);

d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k(a)(3);

e. Enjoining Defendant from further contacting Plaintiff; and

f. Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

47. Plaintiff repeats and realleges paragraphs 1 through 46 as though fully set forth herein.

48. The TCPA, pursuant to 47 U.S.C. § 227(b)(1)(iii), prohibits calling persons on their cellular phone using an automatic telephone dialing system ("ATDS") without their consent. The TCPA, under 47 U.S.C. § 227(a)(1), defines an ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers."

49. Defendant used an ATDS in connection with its communications directed towards Plaintiff's cellular phone. The noticeable pause, lasting approximately three to four seconds in length, before Plaintiff was connected with one of Defendant's live representatives is instructive

9

that an ATDS was being utilized to generate the phone calls. Similarly, the nature and frequency of Defendant's contacts points to the involvement of an ATDS.

50. Defendant violated the TCPA by placing at least 95 phone calls to Plaintiff's cellular phone using an ATDS without her consent. Any consent Plaintiff *may* have given to be contacted by Defendant using an ATDS was explicitly revoked upon her multiple demands to cease contact.

51. The calls placed by Defendant to Plaintiff were regarding business transactions and not for emergency purposes as defined by the TCPA under 47 U.S.C. §227(b)(1)(A)(i).

52. Under the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(B), Defendant is liable to Plaintiff for at least $500.00 per call. Moreover, Defendant's willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. § 227(b)(3)(C). Defendant received multiple prompts to cease calling, but it defied those demands and continued to harass Plaintiff.

WHEREFORE, Plaintiff, SONIA IVETTE BAUMANN, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff damages of at least $500.00 per phone call and treble damages pursuant to 47 U.S.C. §§ 227(b)(3)(B)&(C);

c. Awarding Plaintiff costs and reasonable attorney fees;

d. Enjoining Defendant from further contacting Plaintiff; and

e. Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT III – VIOLATIONS OF THE WISCONSIN CONSUMER ACT

53. Plaintiff restates and realleges paragraphs 1 through 52 as though fully set forth herein.

54. The WCA states:

> "In attempting to collect an alleged debt arising from a consumer credit transaction or other consumer transaction…a debt collector may not…engage in other conduct which can reasonably be expected to threaten or harass the customer or a person related to the customer." Wis. Stat. §427.104(1)(h)

55. Defendant violated §427.104(1)(h) by engaging in harassing conduct in contacting Plaintiff. It was unfair for Defendant to relentlessly contact Plaintiff through means of an ATDS after she notified it to stop calling her. Defendant ignored Plaintiff's demands and continued to systematically place 95 calls to her cellular phone without her consent. Following its characteristic behavior in placing voluminous calls to consumers, Defendant engaged in harassing behavior, willfully done with the hope that Plaintiff would be compelled to make payment.

56. Defendant also placed multiple calls to Plaintiff's cellular phone in the same day, even after being told to cease calling. Defendant called Plaintiff at least four times in one day on seven different days using different phone numbers. Placing several calls in a short amount of time is extremely harassing behavior, especially after being told by Plaintiff that she does not wish to be contacted.

57. The WCA was designed to protect consumers, such as Plaintiff, from the exact behavior committed by Defendant.

58. The WCA further states that "in attempting to collect an alleged debt arising from a consumer credit transaction…a debt collector may not:"

> "Use obscene or threatening language in communicating with the customer or a person related to the customer." Wis. Stat. §427.104(1)(i)

> "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist." Wis. Stat. §427.104(1)(j)

59. Defendant violated §427.104(1)(i) and (j) when it told Plaintiff that if she did not make a payment, a warrant would be issued for her arrest and a sheriff would come to her home. This is extremely threatening language and Defendant attempted to enforce a right with knowledge that the right does not exist. As a member of the ACA since 1950, Defendant knew it was unlawful to threaten Plaintiff with imprisonment, but it acted in defiance of the law.

60. Defendant also violated §427.104(1)(j) by continuing to place calls to Plaintiff's cellular phone after she told it to stop calling. Through its conduct, Defendant misleadingly represented to Plaintiff that it had the legal ability to contact her via an automated system when it no longer had consent to do so.

61. As pled in paragraphs 25 through 31, Plaintiff has suffered actual damages as a result of Defendant's unlawful practices, including costs associated with purchasing and maintaining a blocking application subscription. As such, Plaintiff is entitled to relief pursuant to §427.105.

62. Defendant's conduct was outrageous, willful and wanton, and showed a reckless disregard for the rights of Plaintiff. Defendant acted in defiance of Plaintiff's prompts. Plaintiff demanded that Defendant stop contacting her, but yet, she was still bombarded with collection phone calls from Defendant. In an unfair and deceptive manner, Defendant called Plaintiff at least 95 times using different phone numbers. This onslaught of phone calls was an attempt by Defendant to harass Plaintiff into submission. After Plaintiff told it to stop calling, Defendant had more than enough information to know that it should not continue calling her phone number. Defendant falsely and deceptively represented that it had the legal ability to contact Plaintiff seeking collection of debt when it did not. Upon information and belief, Defendant regularly engages in the above described behavior against consumers in Wisconsin and for public policy reasons should be penalized.

WHEREFORE, Plaintiff, SONIA IVETTE BAUMANN, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to §427.105, in an amount to be determined at trial, for the underlying violations;

c. Awarding Plaintiff costs and reasonable attorney fees pursuant to §425.308(1)-(2);

d. Enjoining Defendant from further contacting Plaintiff; and

e. Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

63. Plaintiff restates and realleges paragraphs 1 through 62 as though fully set forth herein.

64. "To state a claim for intentional infliction of emotional distress, a plaintiff must allege (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that his conduct would do so; and (3) the defendant's conduct actually caused severe emotional distress." *Cangemi v.Advocate S. Suburban Hosp.*, 364 Ill. App. 3d 446, 470, 845 N.E.2d 792, 813, 300 Ill. Dec. 903 (2006).

65. Defendant intentionally engaged in extreme and outrageous conduct when it incessantly attempted to intimidate and coerce Plaintiff into making payments via threats and harassment carried out during the phone calls to Plaintiff's cellular phone.

66. Defendant knew that its relentless phone calls and threatening language would inflict severe emotional distress upon Plaintiff. Threatening to have a warrant issued for her arrest and sending a sheriff to her home is frightening and would cause a consumer to feel extremely threatened and vulnerable.

67. This deliberate conduct of threatening Plaintiff with imprisonment and sending a sheriff to her home is indicative of Defendant's intent to inflict emotional distress upon Plaintiff. Defendant knew that its conduct would cause Plaintiff to suffer severe emotional distress, which was its intention, as frightening Plaintiff would likely force her to make a payment.

68. Defendant's conduct was beyond all possible bounds of decency, was atrocious and utterly intolerable in a civilized society.

69. Defendant's threats were designed to instill fear and emotional distress upon Plaintiff.

70. As pled in paragraphs 25 through 31, Plaintiff was severely damaged by Defendant's conduct.

WHEREFORE, Plaintiff, SONIA IVETTE BAUMANN, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff her actual damages in an amount to be determined at trial;

c. Awarding Plaintiff punitive damages in an amount to be determined at trial; and

d. Awarding any other relief as this Honorable Court deems just and appropriate.

Dated: February 27, 2017                  Respectfully submitted,

<u>s/ Nathan C. Volheim</u>
Nathan C. Volheim, Esq. #6302103
Admitted in the Eastern District of Wisconsin
Sulaiman Law Group, Ltd.
900 Jorie Boulevard, Suite 150
Oak Brook, Illinois 60523
(630) 575-8181 x113 (phone)
(630) 575-8188 (fax)
nvolheim@sulaimanlaw.com